IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CAPITOL BROADCASTING COMPANY, INC., THE MCCLATCHY COMPANY, LLC d/b/a THE NEWS AND OBSERVER PUBLISHING COMPANY, and JAMES S. FARRIN, P.C. d/b/a LAW OFFICES OF JAMES SCOTT FARRIN, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:22CV1068 |
| CITY OF SALISBURY, N.C., CITY OF KANNAPOLIS, N.C., CITY OF RALEIGH, N.C., NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, and NORTH CAROLINA STATE HIGHWAY PATROL, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs Capitol Broadcasting Company, Inc., The McClatchy Company, LLC d/b/a The News and Observer Publishing Company, and James S. Farrin, P.C. d/b/a Law Offices of James Scott Farrin ("Plaintiffs") initiated this action for declaratory relief against Defendants the City of Salisbury, the City of Kannapolis, the City of Raleigh, the North Carolina Department of Public Safety, and the North Carolina State Highway Patrol. (ECF No. 1 ¶¶ 1–24.) Plaintiffs seek a declaration that the Driver's Privacy Protection Act

("DPPA"), 18 U.S.C. § 2721, *et seq.*, does not bar North Carolina law enforcement agencies from releasing to the public, under applicable state laws, motor vehicle accident reports that contain the unredacted names and addresses of involved drivers. (*Id.* ¶ 1.) Before the Court is the City of Raleigh's Motion to Dismiss made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] (ECF No. 20.) For the reasons that follow, the Court will grant Raleigh's motion and dismiss this action for lack of jurisdiction.

I. BACKGROUND

A. DPPA

The Driver's Privacy Protection Act holds liable parties "who knowingly obtain[], disclose[] or use[] personal information, from a motor vehicle record, for a purpose not permitted [by the statute]." 18 U.S.C. § 2724(a). The statute defines "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id.* § 2725(1).

Under the DPPA, state departments of motor vehicles ("DMVs") are generally prohibited from knowingly disclosing "personal information" to any person or entity. *Id.* § 2721(a)(1). As defined by the DPPA, "personal information" includes "an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), [and] telephone number, . . . but does not include information on vehicular accidents, driving violations, and driver's status." *Id.* § 2725(3).

---

[1] Only the City of Raleigh moves to dismiss this action.

### B. Accident Reporting Procedure in North Carolina

When a car accident occurs in North Carolina, law enforcement agencies ("LEAs") are required to investigate those accidents which are reported to them. N.C. Gen. Stat. § 20-166.1(e). Within twenty-four hours of the accident, an investigating officer must "make a written report of the accident" for the relevant LEA. *Id.* The North Carolina Division of Motor Vehicles ("NCDMV") provides the forms and procedures for submitting these accident reports to LEAs. *Id.* § 20-166.1(h). All LEAs must forward completed accident reports to the NCDMV within ten days. N.C. Gen. Stat. § 20-166.1(e).

### C. NCPRA

Under the North Carolina Public Records Act ("NCPRA"),

> [t]he public records and public information compiled by the agencies of North Carolina government, or its subdivisions are the property of the people. Therefore, it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law.

N.C. Gen. Stat. § 132-1(b). A "public record" is defined as "all documents, papers, . . . electronic data-processing records, artifacts, or other documentary material," that is "made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions." *Id.* § 132-1(a).

North Carolina law further specifies that "reports made by law enforcement officers and medical examiners are public records and are open to inspection by the general public at all reasonable times." *Id.* § 20-166.1(i). Similarly, the NCPRA mandates that "[e]very custodian of public records shall permit any record in the custodian's custody to be inspected and examined at reasonable times . . . ." *Id.* § 132-6(a).

### D. Plaintiffs' Requests for Accident Reports from Defendants

The Plaintiffs in this action are two media organizations and a law firm. The two media organizations "routinely use information provided in accident reports to inform reporting that appears in television, print, radio and digital formats." (ECF No. 1 ¶ 5.) The law firm uses the accident reports to "introduce[] its services to drivers who may need the assistance of counsel to oppose aggressive claims representatives from insurance companies, understand their rights, or pursue injury compensation in the courts." (*Id.*) The Defendants in this action are three North Carolina municipalities that supervise and control LEAs, and the North Carolina Department of Public Safety, which also supervises and controls an LEA.[2] (*Id.* ¶¶ 4, 24.) As earlier stated, only the City of Raleigh has moved to dismiss this action.

Plaintiffs allege that they have sought accident reports from Defendants' LEAs pursuant to the NCPRA, however, Defendants have restricted Plaintiffs' access to accident reports citing the DPPA. (*Id.* ¶¶ 3–4, 37–60.) The restrictions vary by Defendant. (*See id.* ¶¶ 37–60.) They include refusing to make accident reports available directly and instead referring Plaintiffs to the NCDMV requests system, (*id.* ¶ 47), only releasing accident reports to the law firm plaintiff if that firm represents someone involved in the accident, (*id.* ¶ 50), using a website design that only allows searching of reports using information that only someone involved in the accident would know, (*id.* ¶ 54) and requiring requesters to affirm that they are seeking the information for a DPPA-authorized purpose, (*id.* ¶ 55). As alleged by Plaintiffs, it is Defendants' position that simply releasing the accident reports pursuant to

---

[2] Plaintiffs named both the North Carolina Department of Public Safety and the LEA that it supervises, the North Carolina State Highway Patrol, as Defendants in this action. (ECF No. 1 ¶¶ 23–24.)

the NCPRA without these restrictions may create liability for Defendants under the DPPA. (*Id.* ¶ 3.) Therefore, "Plaintiffs seek a declaration that . . . would clarify that the DPPA does not bar Defendants from releasing to the public, pursuant to state law, accident reports that contain driver-identifying information that includes names and addresses." (*Id.* ¶ 6.)

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) raises the question of "whether [the claimant] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). A defendant may present a motion to dismiss for lack of subject matter jurisdiction either by contending that the complaint does not sufficiently allege jurisdiction, or by contending that the allegations in the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Unless a defendant pursues the latter method and attacks the truth of the allegations, a court takes them as true and "in effect, . . . afford[s] the same procedural protection as [the plaintiff] would receive under a Rule 12(b)(6) consideration." *Id.* A court should grant a motion under Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. Rule 12(b)(6)

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the complaint satisfies the pleading standard under Rule

5

8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)). A claim is plausible when the complaint alleges sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The court "view[s] the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a motion to dismiss, "a [district] court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Generally, on a Rule 12(b)(6) motion to dismiss, a court cannot consider documents beyond the complaint without converting the motion into a motion for summary judgment. *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). The court can, however, properly consider documents attached to or referenced in the complaint, as well as those attached to the motion to dismiss, so long as those documents are "integral to and explicitly relied on in the complaint." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

### III. DISCUSSION

The Court addresses the City of Raleigh's challenge to its jurisdiction before turning to the merits of this case.

6

The Complaint in this action asserts that "[this] Court . . . has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202." (ECF No. 1 ¶ 25.) "[I]t is elementary that a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004). In this case, the City of Raleigh has challenged whether the second of these three jurisdictional prerequisites is satisfied. (*See* ECF No. 21 at 4–17.) There is no suggestion here that this Court might have diversity jurisdiction. (*See* ECF No. 1 ¶ 11 (allegation that Plaintiff Capitol Broadcasting is a North Carolina corporation with its principal office in North Carolina); *id.* ¶¶ 14–24 (allegations that all Defendants are North Carolina municipalities or agencies).) Thus, the question for the Court is whether it has federal question jurisdiction over this action.

Under 28 U.S.C. § 1331, "district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "[I]n the 'vast majority' of cases where federal-question jurisdiction exists," it exists because "federal law creates the plaintiff's cause of action." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir. 1996). Here, however, the Complaint alleges this Court possesses federal question jurisdiction because the action "arises" under the DPPA, (ECF No. 1 ¶ 25), but does not reference any provision of that law authorizing a private cause of action, (*see generally id.*). The City of Raleigh

therefore contends that this action does not actually "arise" under the DPPA, and Defendant Raleigh argues this is so due to the "well-pleaded complaint" rule. (ECF No. 21 at 13).

Under the "well-pleaded complaint" rule, "[w]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–10 (1983) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)); *see also* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3566 ("The well-pleaded complaint rule stands for the proposition that the court, in determining whether the case arises under federal law, will look only to the claim itself and ignore any extraneous material."). "Thus, a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that . . . a federal defense the defendant may raise is not sufficient to defeat the claim." *Franchise Tax Bd.*, 463 U.S. at 10 (citations omitted); *see also Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 198 (4th Cir. 2022) (same).

Based on the Supreme Court case *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, this Court concludes that Plaintiffs' action does not "arise" under the DPPA, and this Court therefore does not have federal question jurisdiction.

In *Franchise Tax Board*, a California agency attempted "to collect unpaid state income taxes by levying on funds held in trust for the taxpayers [by] an ERISA-covered vacation

8

benefit plan." 463 U.S. at 4. The trust holding the funds refused to cooperate with the agency, claiming that ERISA preempted the state law basis for the agency's levy. *Id.* at 5–7. The agency sued the trust and brought two claims: first, a claim pursuant to the California tax code for the funds; and second, a claim for declaratory relief to resolve whether the trust could invoke ERISA preemption to refuse the levy. *Id.* at 6, 13. The Supreme Court held that under the well-pleaded complaint rule, there was no federal jurisdiction over the action. *Id.* at 27–28.

With respect to the agency's first claim for the funds, the Supreme Court reasoned that there was no jurisdiction because "[state] law establishe[d] a set of conditions, without reference to federal law, under which a tax levy may be enforced; federal law bec[ame] relevant only by way of a defense to an obligation created entirely by state law, and then only if [the agency] ha[d] made out a valid claim for relief under state law." *Id.* at 13.

The Court described the agency's second claim for declaratory judgment as "a more difficult problem." *Id.* at 14. Generally, "the rule is that an action for a declaratory judgment will invoke federal question jurisdiction only if the coercive action that would have been brought (were declaratory judgments not available) would have been within that jurisdiction." 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3566. The Supreme Court acknowledged that it was "clear on the face of [the] well-pleaded complaint that [the agency could] not obtain the relief it [sought] . . . without a construction of ERISA and/or an adjudication of its preemptive effect and constitutionality—all questions of federal law." *Franchise Tax Bd.*, 463 U.S. at 14. However, because "ERISA [did] not provide an alternative cause of action in favor of [the agency] to enforce its rights," there was no federal jurisdiction
9

over the claim for declaratory relief either. *Id.* at 26–27; *see also id.* at 27 ("ERISA carefully enumerates the parties entitled to seek relief under § 502 . . . . A suit for similar relief by some other party does not 'arise under' that provision."). The Court acknowledged that the outcome of the case was due to "reasons involving perhaps more history than logic," but ultimately instructed that the case be remanded back to state court. *Id.* at 4.

Here, Plaintiffs seek to obtain documents from Defendants. As in *Franchise Tax Board*, Defendants have refused to cooperate based on their interpretation of a federal law, specifically, the DPPA. Pursuant to *Franchise Tax Board*, whether this Court has jurisdiction hinges on whether Plaintiffs' claimed entitlement to the documents in question is created by state law or by federal law. The Court finds that the right that Plaintiffs seek to assert in this case is a state law right. Plaintiffs' Complaint explicitly claims entitlement to the documents based on the NCPRA. (ECF No. 1 ¶ 3 (alleging that Defendants are not complying with the NCPRA); *id.* ¶ 92 (seeking a declaration "that the DPPA does not prevent Defendants from releasing accident reports *under applicable North Carolina law*" (emphasis added).) There is no assertion in the Complaint that, absent the NCPRA, the federal DPPA requires Defendants to produce any documents to Plaintiffs. Plaintiffs even concede in their brief that the DPPA does not provide a remedy to them in the form of access to records. (ECF No. 22 at 18.) Thus, under the well-pleaded complaint rule, the instant action arises under state law, the DPPA is only relevant insofar as it is a potential federal defense, and therefore this Court does not have federal question jurisdiction.

Plaintiffs argue, however, that this case nevertheless arises under federal law for jurisdictional purposes because it "presents 'a substantial, disputed question of federal law.'" (ECF No. 22 at 9 (quoting *Franchise Tax Bd.*, 463 U.S. at 13).)

The Fourth Circuit has explained that there is a "small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (quoting *Ormet Corp.*, 98 F.3d at 806). To show that a case is within this small class, a party must show: "(1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial." *Id.* "A plaintiff's right to relief necessarily depends on a question of federal law when 'it appears that some . . . disputed question of federal law is a necessary element of one of the well-pleaded state claims.'" *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (quoting *Franchise Tax Bd.*, 463 U.S. at 13). "If a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." *Id.*

The City of Raleigh points out that although Plaintiffs invoke the substantial question doctrine, Plaintiffs' brief is devoid of any argument why this action qualifies as one of those rare cases where the doctrine applies. (ECF No. 23 at 3.)

Having reviewed Plaintiffs' brief, the Court agrees with Raleigh—Plaintiffs have not explained how the two criteria set out by the Fourth Circuit have been met here. (*See* ECF No. 22 at 9–11.) The Court also agrees with Raleigh that the resolution of this case does not

11

Case 1:22-cv-01068-LCB-LPA   Document 24   Filed 06/29/23   Page 11 of 14

depend on the resolution of a substantial question of federal law such that federal jurisdiction exists. According to the logic of the Complaint, the DPPA has nothing to do with Plaintiffs' entitlement to the documents—Plaintiffs' entitlement to the documents comes from the NCPRA and the DPPA has only become involved because Defendants interjected it in response to the NCPRA demands. (*See, e.g.*, ECF No. 22 at 13 (Plaintiffs' argument that the DPPA's legislative history shows that "the statute has *no application at all* to the disclosure of 'personal information' through State and local records systems applicable to custodians other than a state DMV" (emphasis in original)).) It is therefore clear that Plaintiffs could establish the essential elements of their state law claim that they have a right to the documents without reference to the DPPA. Thus, the NCPRA claim does not necessarily depend on a question of federal law.

Plaintiffs also argue that they prevail pursuant to the rule that a federal court has jurisdiction over a suit where "the right set up by [a] party may be defeated by one construction of the constitution or law of the United States and sustained by the opposite construction." (ECF No. 22 at 9–10 (quoting *Ormet Corp*, 98 F.3d at 806).) Plaintiffs' argument appears to posit that the federal "right" at issue is the Defendants' supposed right to refuse to Plaintiffs' requests. (*See id.* at 10 ("[Plaintiffs] seek a ruling that the DPPA affords the City no independent basis upon which to decline to comply with state public records laws.").) This characterization of the case is unpersuasive; it appears to be an attempt to end-run the well-pleaded complaint rule by construing a federal defense as a federal right to raise a federal defense. "[I]t is blackletter law that a federal defense differs from a claim arising under federal law . . . . [and a] natural plaintiff . . . cannot use 28 U.S.C. § 2201, the declaratory-judgment

12

Case 1:22-cv-01068-LCB-LPA   Document 24   Filed 06/29/23   Page 12 of 14

statute, to have a federal court blot out a potential federal defense to its own potential state-law suit." *Chi. Trib. Co. v. Bd. of Trs. of the Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012) (citations omitted) (finding there was no federal question jurisdiction where a media organization sought a declaratory judgment that the federal Family Educational Rights and Privacy Act did not bar a state university from releasing records pursuant to the Illinois Freedom of Information Act).

Plaintiffs also argue that this case presents a substantial question of federal law insofar as they seek to affirmatively assert their First Amendment rights. (ECF No. 22 at 11.) The City of Raleigh responds that there is no First Amendment cause of action in this case because, among other reasons, the Complaint does not include a cause of action under the First Amendment. (ECF No. 23 at 3–4.)

The Court agrees with the City of Raleigh that the Complaint does not plead anything under the First Amendment. The 92-paragraph Complaint mentions the First Amendment only twice. (ECF No. 1 ¶¶ 5, 62.) In one place, the Complaint alleges that Plaintiffs' access to accident reports "is integral to the exercise of their First Amendment rights." (*Id.* ¶ 5.) In the other place, the Complaint alleges that "[the] USDOJ concluded there was no First Amendment deficiency in the [DPPA]." (*Id.* ¶ 62.) In contrast to these passing remarks, within the section of the Complaint labeled "Count I – Declaratory Judgment," the Complaint makes clear that Plaintiffs believe they are entitled to the documents "as required by North Carolina law," "in the manner prescribed by the NCPRA," and "under applicable North Carolina law." (*Id.* ¶¶ 87–92.) The Complaint's prayer for relief also specifies that the Plaintiffs believe that the records must be released "in the manner prescribed by the NCPRA." (*Id.* at

13

38.) The Court therefore finds that the Complaint does not plead any claim under the First Amendment. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Accordingly, this action does not arise under the First Amendment.

For the foregoing reasons, the Court finds that this action does not arise under federal law for the purposes of federal question jurisdiction. This Court therefore lacks federal question jurisdiction. Because this Court also lacks diversity jurisdiction, the Court must grant the City of Raleigh's motion under Rule 12(b)(1) and dismiss this action without prejudice. As the Court finds it lacks jurisdiction, it will not address the parties' arguments regarding Rule 12(b)(6).

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that the City of Raleigh's Motion to Dismiss, (ECF No. 20), is **GRANTED**, and this action is **DISMISSED**.

This, the 29th day of June 2023.

/s/ Loretta C. Biggs
United States District Judge